## Richmond

### WILLIAM DAVIS v. COMMONWEALTH OF VIRGINIA.

April 21, 1947.

Record No. 3218.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Wallace N. Tiffany* and *William H. Gaines*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. Carrington Thompson, Assistant Attorney General,* for the Commonwealth.

HOLT, C. J., delivered the opinion of the court.

William Davis has been convicted of first degree murder. That conviction is now before us on a writ of error. He

hails from Halifax county, is forty-three years old, is married, can neither read nor write, and, according to his statement, is part white, part colored and part Indian.

On August 5, 1946, in Fauquier county Davis shot and killed John H. Woodson. For this offense on September 23, 1946, he was indicted for murder by a grand jury of that county. He was arraigned on September 25, 1946, and pleaded not guilty. His trial was continued until October, following, and was set down for October 17, 1946. A jury was empanelled, heard the evidence and under the court's instructions returned this verdict:

"We the jury find the defendant William Davis guilty of murder in the first degree as charged in the within indictment and fix his punishment at death."

Thereupon petitioner's counsel moved that the verdict be set aside as contrary to the law and evidence and because it is said that no instruction should have been given on first degree murder. That motion was set down for hearing on October 22, 1946, heard on that day and overruled. The verdict of the jury was confirmed by the trial court and execution of its sentence was set for January 3, 1947.

That homicide has this background: A railway station on The Southern Railway at Nokesville in Prince William county and another at Calverton in Fauquier county had recently been broken into and robbed. The Railway Company was anxious to arrest whoever was guilty of these two felonies, and had put its detectives to work for that purpose. One of these detectives was John H. Woodson, and the other was T. L. Thomas.

Davis was guilty in each instance and knew that railway detectives were hunting him that they might arrest him, though of course he did not know any of these detectives, even by sight.

On the morning of August 5, 1946, about ten o'clock, Woodson and Thomas, in civilian attire, were walking south on the railroad tracks near Catlett station. Davis was first seen by them walking north on this track, about 300 yards away. These detectives halted to see who was the man

approaching. When he was about 25 yards away, Davis started to leave the railroad tracks and his line of approach, which would have brought him to where these detectives stood. Thomas then noticed that Davis had his hand in his left pants pocket and said to Woodson: "Look out, he has his hand in his pocket." Woodson then asked Davis: "Where are you heading, buddy?" To which he answered: "Just up the track." He asked him: "Where you from?" Davis then pulled a pistol from his pocket and fired twice at Woodson and then attempted to fire at Thomas, but the pistol missed fire. Thomas threw himself on Davis and beat him to the ground. A workman came up, and Thomas left this workman in charge of Davis, who had been badly beaten, and went to Catlett station, 400 yards away to telephone for medical help. When he got back he found that Davis had escaped. He was a fugitive from justice and not seen again for two days, after which, at nightfall, he appeared at the home of the Musselman family in Fauquier county with a loaded rifle and demanded and got food, but he was overpowered by the Musselmans and brought by them and others to the Fauquier county jail.

He was there questioned by the Commonwealth's Attorney in the presence of the sheriff, deputy sheriff and others. Before he was examined he was duly cautioned. He was told the official character of those present and that he was free to refuse to answer any or all questions. He then admitted shooting Woodson and said that he had been twice robbed within the last two months, and that he shot Woodson because he thought that Woodson and Thomas were about to rob or assault him. He admitted that he fired two shots at Woodson and attempted to shoot Thomas, but that the pistol missed fire, and said nothing about having fired first at Woodson by way of warning. He also then admitted that he had recently robbed railway stations at Nokesville and at Calverton.

At the trial, Thomas testified, telling of how he and Woodson chanced to meet Davis, as has been stated in some detail. He said that he knew Woodson was armed and car-

ried a pistol in a holster on his right hip. On cross-examination he said that he never saw Woodson reach for his pistol because his attention was focused primarily on what Davis was doing. This is the final statement, however, which that witness made on redirect examination:

" * * * he did not see Woodson reach for his gun and he had no reason to do so because they were merely seeking to question Davis to determine whether he lived in that locality and had seen anybody with a .22 rifle with telescopic sights which had been stolen from the Calverton depot."

Davis testified on his own behalf and said that as he neared Catlett he saw two men approaching him and as they got close to him the older one advanced and said: "Which way you heading?" to which he replied: "Up the track"; that the older one then reached for a pistol on his right hip; thereupon he then pulled a .22 pistol from his left pants side pocket and shot at the man's feet, intending not to strike him, but only to warn him; that seeing the older man actually pull the pistol from his hip, he again fired at him, intending not to kill the man, but only to strike him in the arm or shoulder to prevent him from using the pistol and that this bullet hit Woodson. He further said that he had been robbed on two previous occasions that summer, once of $40.00 and again of $35.00, and that when he saw these two men approaching him, without badges or uniforms, and that one of them was attempting to draw a pistol, he feared that he was again about to be robbed or assaulted; that he had no intention of killing Woodson, but that his first shot was only by way of warning and the second merely to wound him, and that Woodson did not take his hand out of his pocket until after he had fired at him; that it was then that he fired at him the second time; he had no recollection of having fired at Thomas at all, and that he had no money on his person when he thought these men intended either to rob him or to assault him.

The only objection to instructions given at the instance of the Commonwealth is that they dealt with first degree mur-

der. A number were given at the instance of the defendant; among them was this:

"The court instructs the jury that the Commonwealth must prove beyond any reasonable doubt every material fact and if the jury have any reasonable doubt as to the grade of the offense, that is whether the prisoner is guilty of first or second degree murder, then they must resolve the doubt in favor of the prisoner and find him guilty of the lower grade or murder in the second degree.

"The court instructs the jury that even though William Davis believed he was being sought for in connection with a criminal charge, he was not required to submit to unexplained interceptions and assaults by strangers, and if the said William Davis reasonably believed that the deceased, Woodson, was about to make an assault upon him with a firearm, then William Davis was entitled to take such measures as appeared to him to be reasonably necessary to defend himself from death or serious bodily harm."

" * * * every homicide is *prima facie* murder in the second degree, and that the burden is on the accused to reduce, and on the Commonwealth to elevate, the grade of the offense." *Bradshaw* v. *Commonwealth*, 174 Va. 391, 4 S. E. (2d) 752.

We have seen that the court told the jury that if they accepted Davis' statement of how the killing came to pass, he was entitled to do whatever seemed to be reasonably necessary to defend himself from death or serious bodily harm.

We have recently had occasion, in *Presley* v. *Commonwealth*, 185 Va. 261, 38 S. E. (2d) 476, to state the law applicable in such cases and find it unnecessary to restate what is there stated in some detail.

Such testimony, if not in dispute and not inherently improbable, must be accepted, which is but to say that the account which the accused gives of the homicide must be a reasonable one.

In the instant case, Davis was a fugitive from justice. He admitted he had been guilty of two felonies, and he knew

that the railway detectives were looking for him. His statement that he feared he was about to be robbed did not appeal to the jury. He did not have a dollar on him, and he knew it. His claim that he feared that he was about to be assaulted and beaten by two well-dressed strangers in the daytime within 400 yards of a passenger station did not appeal to the jury. What the jury believed, and what they had a right to believe, was that Davis feared arrest. He knew that he was guilty of two felonies and so to escape arrest, he, without more, shot and killed one of these detectives because he appeared to reach in his hip pocket for a pistol. This plea of self-defense did not appeal to the jury. Why he should have undertaken to shoot Thomas we do not know as Thomas was not even armed. In his testimony he said that he first fired at Woodson by way of warning. That claim he did not make in his preliminary statement made to the Commonwealth's Attorney in the Fauquier county jail.

We find no error in the record. The conviction of the accused must be affirmed.

*Affirmed.*